IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELAINE M. WHITE,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

CV 09-3038-TC

ORDER

COFFIN, Magistrate Judge:

**BACKGROUND**

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. The court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff was born in 1958 and was 34 at the time of her alleged onset date of September 3, 1992. She has more than a high school education. She had past relevant work at the light to

medium level of exertion that involved frequent or near constant contact with the general public.

Plaintiff asserts in this action that she is disabled due to her physical and mental disorders, including: dysthymic/depression disorder; anxiety disorder and panic attacks; obsessive compulsive disorder(OCD); panic disorder with agoraphobia; insomnia; social anxiety disorder; myokymia cramp fasciculation syndrome (right leg muscle spasms/right vastus lateralis spasms); severe headaches/migraines; degenerative disc disease of the cervical and lumbar spine; history of carpal tunnel syndrome and surgery; pontine brain legions/ischemic gliosis; and the pain and other symptoms and impairments reasonably arising from these conditions individually and in combination.

Plaintiff seeks a reversal of the Commissioner's decision and a remand for the awarding of benefits. In the alternative, plaintiff seeks a reversal and remand for further proceedings.

As discussed in further detail below, reversal and remand is appropriate in the circumstances of this case. This court exercises its discretion in favor of further proceedings upon remand as the record has not been fully developed and there are outstanding issues that must be resolved before a determination of disability can be made.

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of

the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. Id.; see also 20 C.F.R. § 404.1560(c)(2).

Here, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date; see 20 C.F.R. § 405.1520(b).

At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; movement disorder of the right thigh; obesity and personality disorder ; see 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal the requirements of a listed impairment ; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed plaintiff with the residual functional capacity (RFC) for a reduced range of light work where she could

only occasionally climb, crawl, balance, stoop or crawl, could walk for one-half hour at a time and could not have close interaction with coworkers or the general public; see 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1567.

At step four the ALJ found that plaintiff was unable to perform her past relevant work; see 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

At step five, the ALJ found that plaintiff could work as a small products assembler, electronics worker, addresser, and microfilm document preparer.

**Discussion**

Among other arguments, plaintiff contends that the ALJ improperly rejected the opinion of an examining physician, psychologist Dr. O'Connell, PhD.

Standards Regarding a Physician's Opinion

The relative weight given to the opinion of a physician depends on the physician's opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion receives the least weight. Id.; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

1996). The ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinion of an examining physician or psychologist. Lester, 81 F.3d at 830-831. Where the doctor's opinion is not contradicted by another doctor , the opinion may only be rejected for clear and convincing reasons, supported by substantial evidence in the record. Id.

Dr. O'Connell's Opinion

Dr. O'Connell performed a psychological evaluation for the purpose of determining plaintiff's current psychological status and any functional impairment which could limit her performance in the workplace. He noted that even though plaintiff focused on her physical symptoms and their accompanying medical issues, it appeared that her most significant functional limitations arise from psychiatric difficulties. His opinions, conclusions and diagnosis were based on a clinical interview, a brief social history, a mental status examination and the results of psychological testing, including nine tests. He also reviewed records from Jackson County Mental Health.

In a section entitled "Patient Complaints," O'Connell noted that plaintiff

> reported she has been diagnosed with Obsessive Compulsive Order. Her primary complaints appeared to be chronic rumination (usually about conversations that take place

> in her social interactions) and some hoarding behavior.... She also complains of anxiety and depression. She experiences about three panic attacks per week. Typically they are triggered by lengthy periods of rumination. Common symptoms include intense anxiety, sweating and racing thoughts. They typically last one to three hours. They also can be triggered by criticism from others and by Elaine focusing strongly 'on what is expected of me.' She also complains of 'inappropriate conversations.' She is prone to become upset or angry when people converse with her and bring up seemingly innocuous topics such as how their children are doing or how her children are doing. She seems to have a somewhat obsessive concern about verbal misbehavior on her part should conversations like this arise.

Tr. 501.

In a section entitled "History," O'Connell noted that plaintiff's first contact with a mental health professional took place in 1986 and that she was diagnosed with Post Traumatic Stress Disorder following an incident in which her divorce attorney(who was also her employer) sexually harassed her. O'Connell also noted that plaintiff felt she experienced emotional abuse when her parents disapproved and distanced themselves emotionally from her after she became pregnant at the age of 13. She reported earlier that the pregnancy was the result of a rape by a senior in high school.

As for daily activities, O'Connell reports that "plaintiff is capable of using the telephone, but avoids it whenever possible. Her husband will always answer the telephone at home.

She is able to leave home reasonably comfortably, but only in the company of her husband." Tr. 502.

O'Connell noted after one test that "her pattern of responding suggested that she was quite conservative regarding accuracy. As a result, she appears to be a person who wants to be very sure that they are correct before giving a response.... It is not likely this woman will demonstrate significant problems with tracking or sustaining attention, although her conservative response bias may slow her performance in settings where frequent decision-making is required." Tr. 509.

O'Connell noted that plaintiff's profile predicts a high likelihood that she will demonstrate compulsive behaviors and episodes of obsessive thoughts and ruminations. Tr. 511. Among other things, Dr. O'Connell diagnosed plaintiff with "Obsessive Compulsive Disorder", "Anxiety Disorder NOS", "Rule Out ... Social Anxiety Disorder," "Pain Disorder Associated with Psychological Factors and a General Medical Condition," "Posttraumatic Stress Disorder (provisional)" and "Schizoid Personality Disorder." TR. 511.

O'Connell stated:

> [i]t does appear that her overall functional capacity is significantly impacted by her psychiatric diagnoses. In addition to her hoarding behavior, the results from a number of the tests administered as part of this assessment suggest that Elaine's compulsive style will make it difficult for her to function at a normal pace because of problems shifting mental set and adjusting

> response strategies appropriately....Even though Elaine focuses on her physical symptoms and their accompanying medical issues, it appears that her most significant functional limitations arise from psychiatric difficulties. In addition to the emotional challenges that she faces in attempting to enter the social interactions necessary in almost all work settings, it is likely her ability to make efficient choices in the workplace will be significantly limited by her OCD.

Tr. 512.

The Handling of Dr. O'Connell's Opinion

In evaluating and largely rejecting Dr. O'Connell's report, the ALJ did not rely on a treating physician or another examining physician and acknowledged that the DDS' determination of no severe mental impairment was made without the benefit of Dr. O'Connell's report.

As to O'Connell's report, the ALJ stated:

> As for opinion evidence, there is no explicit opinion of disability found in the record. Although Dr. O'Connell stated that the claimant's ability to make efficient choices would be significantly limited by her obsessive compulsive disorder, this was based solely on the claimant's description of having difficulty throwing things away, especially receipts. This was a one time examination only and Dr. O'Connell's conclusion was quite contrary to observations made during the evaluation and test results which most often fell in the average range.

Tr. 31.

The ALJ also stated:

> Although the claimant's representative argued that she had 'marked' limits in her ability to function at a normal pace because she had problems mentally adjusting, there is no evidence to support such a limitation. Although the claimant's pace was slowed on some of her tests, most of the test results fell in the average range, or low average at worst. She had no problems with concentration or memory and her processing speed without errors was comparable to that of her peers.

Tr. 32.

In response to plaintiff's argument that the ALJ improperly rejected O'Connell's opinion, the Commissioner notes the vagueness and lack of clearer explanations in O'Connell's report:

> The ALJ accepted that plaintiff's psychiatric impairments impacted her ability to work. The ALJ also found plaintiff's impairments caused social functioning limitations and that she was unable to have close interaction with co-workers or the general public. (Tr. 30, Finding 5). However, the ALJ determined that Dr. O'Connell's statement, overall, was not explicit, and was too vague to show that plaintiff was unable to work. (Tr. 31). The colloquy between plaintiff's counsel and the vocational expert highlights the problem with plaintiff's reliance on Dr. O'Connell's vague statements. Counsel asked the vocational expert whether a hypothetical person with the same residual functional capacity and vocational factors as plaintiff, who was also unable to function at a normal pace, would be able to perform the jobs identified by the vocational expert. (Tr. 560). The expert was unable to answer the question without a 'clearer explanation of normal or less than normal pace.' Tr. 560. Dr. O'Connell never

> provided a clearer explanation as to how plaintiff's mental impairments would cause her 'difficulty' in performing at a normal pace.

P. 6 of Defendant's Brief.

The Commissioner also argues that "[i]n any event, the ALJ provided sufficient reasons to reject any inference presented by Dr. O'Connell's statements that plaintiff's impairments precluded her from working. (Tr 31)." p. 6 of Defendants Brief. The Commissioner cites the ALJ's statements that "although Dr. O'Connell stated that the claimant's ability to make efficient choices would be significantly limited by her obsessive compulsive disorder, this was based solely on the claimant's description of having difficulty throwing things away, especially receipts," and "Dr. O'Connell's conclusion was quite contrary to observations made during the evaluation and test results which most often fell in the average range. Tr. 31"

All things considered, the record needs to be more fully developed in the circumstances of this case. In Mayes v. Massinari, 276 F.3d 453, 459-460 (9th Cir. 1999), the Ninth Circuit Court of Appeals stated that an ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. See also 20 C.F.R. §416.912. As noted by the Commissioner above, there is an element of vagueness in O'Connell's report and it could be clearer. The remainder of the

record is inadequate to allow for proper evaluation of the evidence and does not provide the ALJ a basis to resolve any perceived inconsistencies based on substantial evidence in the record as, among other things, the ALJ did not rely on a treating physician or another examining physician and acknowledged that the DDS' determination of no severe mental impairment was made without the benefit of Dr. O'Connell's report. As such, further development of the record is appropriate. See Mayes , supra; 20 C.F.R. §416.912.

The Commissioner's aforementioned alternative argument also fails. The ALJ did not provide sufficient reasons to reject any inference presented by O'Connell's statements that plaintiff's impairments precluded plaintiff from working as it is unclear if the ALJ's findings are supported by substantial evidence in the record. Moreover, it is less than clear if there is a conflict between O'Connell's opinion and his observations during the evaluation and testing as he is an expert in his field and his overall evaluation including many factors considered in their totality. It is also unclear that O'Connell's statement that plaintiff's ability to make efficient choices would be limited by her OCD was a statement based "solely" on plaintiff's difficulty of throwing things away; O'Connell also noted plaintiff's conservative response bias and ruminations about others' criticism. Tr. 509, 501.

The ALJ shall contact Dr. O'Connell and request a new or more detailed report as the ALJ sees fit. The ALJ shall then perform a new five step analysis with the additional information.

All of the parties other arguments have been considered and found unpersuasive.

**CONCLUSION**

As discussed above, the Commissioner's decision is reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

DATED this 21st day of March, 2010.

Thomas Coffin
United States Magistrate Judge